Case number 03-72116. Good morning, Your Honors. My name is Darthea Crager and I represent the petitioner, Mr. Kishore Notash, and the question before the court today in this matter is whether his conviction under 18 U.S.C. 542 for an attempt to introduce goods unlawfully into commerce by false statement is a crime involving moral turpitude. Traditionally, crimes involving moral turpitude have been defined by the seminal U.S. Supreme Court case, Jordan v. DeGeorge, which speaks to crimes which are inherently base, vile, and offensive to the norms of morality. Can I focus you on, you know, I think that you pretty much stated the issue, just in terms of how I'm seeing this. I think that we have to do the straight statutory construction and we're limited to the record that we have in front of us. Now, I know that there's a lot of argument about that the petitioner said that, you know, he didn't fill out the line because he didn't know whether he had to put something or whatever. Now, in my view, I think we just have to look at the statute and see if there's any conduct under the statute, the entire statute, that might not be moral turpitude, that we can't say on its face, and whether his explanation, it seems to me, did he plead guilty or was he convicted? He pled guilty, Your Honor. All right. So he pled guilty. And so he just pled guilty to the statute. So we, and in the record, we don't have any other than just the conviction. We don't have anything else, right? Yes, Your Honor. I did not represent the petitioner on the underlying immigration court or BIA matter. So, yes, we do not have anything in the record which would support the claims that are submitted in the immigration judge's transcript. Well, so it seems to me we're just stuck with the whole statute and whether we look at that statute and is there anything, you know, can he, is there anywhere under there that there could be activity that doesn't involve moral turpitude, right? Yes, Your Honor. The petitioner would submit that on two bases, that Section 542 does not involve moral turpitude. First, that the section, or the statute itself is a divisible statute, that Section A of the statute speaks to false statements, false invoices, and Section B, actually it's not an A or a B, it's a conjunctive statute, and that the section, second section speaks to willful misconduct. And the petitioner would assert that a false statement does not, in itself, without, that a false statement in itself does not support a finding of moral turpitude, and that this court itself in Hirsch v. INS, which is a 1962 case that is still relevant, and I don't believe, Your Honor, that it is in the 28-J letter this afternoon, but the citation is. You can just fill out one of those sheets after the argument. The clerk will give you. Thank you, Your Honor. In Hirsch v. INS, the, this court looked at Section 1001 regarding the catch-all false statement, and the court found that a false statement by itself would not lead to a finding of moral turpitude where there was no question of materiality. The petitioner would assert that his omission to complete the form would not be material to a finding of moral turpitude. Secondly. Why not? Because, I agree with you, you have to take the context, but the effect was to deprive the United States of revenue. Yes. That was obvious. Yes, Your Honor, and there is a greater statute, Section 545, which really speaks to the issue of depriving of revenue, and the United States Supreme Court in Bajekian v. Ashcroft, a 2002 case, speaks to a case which is not quite on force with this matter, but it involves an individual who had deprived the government of information when, by leaving the United States, had deprived the government of $327,000 in export duties. And in that case, the Supreme Court held that the only information, that only information had been deprived, sorry, the only party that had been, I guess, harmed was the government, and that it was deprived of information in the instant matter. And not of the revenue? Not of the revenue, Your Honor, which is interesting, even though there was no revenue paid. In the instant matter, although we do not have it in the record of proceeding, we have the immigration judge's transcript, which speaks to the fact that the government was not deprived of revenue in this matter. Well, after he pleaded guilty, he paid it, but the effect of not filling out what was asked of him was to deprive the government of the tax. And it seems to me this is a case, a case, I don't want to refer to the Supreme Court decided. That's correct, Your Honor. I feel fairly strongly that if you deliberately withhold information from the government to prevent the government from collecting a tax, you're a tax cheat. That's something despicable. Well, yes, Your Honor. The petitioner would argue, though, that he is not a tax evader, that this is merely the importation of the duty. But wasn't that the effect? Well, there are separate cases. And this Court in Goldenstein v. INS looked at the issue of tax evasion. And this Court did not find that tax evasion was a crime involving moral turpitude. I don't know. I'll have to look at that. But you're saying we have held tax evasion is not? Yes, Your Honor. The Court has held that tax evasion is not a crime involving moral turpitude. And we would argue that the deprivation, there was no deprivation. Cited in a brief, that case? Pardon me? Is that in your brief? Yes, Your Honor. That is cited in the brief. I'm surprised at that citation, too. But, Ms. Kruger, it seems to me you're wandering off the point that I thought you and Judge Callahan established, which is that, well, you know, you can't look beyond the statute to see was this material or not material, you know, what was the effect. But you really have to look beyond the statute to see whether the statute itself encompasses conduct that doesn't require moral turpitude in order to convict. And you're not doing it. You're not making that argument. Yes, Your Honor. You're correct. I'm not making the argument. We would also argue that this statute is regulatory an offense. And as a regulatory crime, that it does not rise to the level of a crime involving moral turpitude. Now, do you concede that the first part of the that we could just all go home and deny your petition? Or do you say that under the first part that there's not moral turpitude? No, Your Honor. The petitioner would argue that under the first part of the statute that there is not moral turpitude, that false statements do not rise to the level of moral turpitude, as the Board of Immigration Appeals has found and this Court has found when dealing with convictions under 18 U.S.C. 1001. And that this is not a malum and say crime that is not, as the definition has defined of moral turpitude throughout the courts and the Board of Immigration Appeals, that this is not a crime that is so vile and base and inherently immoral to affect the conscious to find turpitude-ness that, that... You know, you cited Goldstein as the one that we decided. Yes, Your Honor. I'm looking at your brief. That was a case that you tell us about structuring deposits to avoid reporting. I'm sorry, Your Honor. I must have meant the Wittgenstein case, which was the tax evasion case. What's the name of the case? Wittgenstein. And that's a Tenth Circuit case. That is a Tenth Circuit case. I don't think the Ninth Circuit has ever held that. Anything like what you're saying, that cheating the government out of a tax is not a morally despicable act. Your Honor, I apologize. I did miscite the case. That is a Tenth Circuit case that has held that. And now let me ask you as a lawyer and citizen. Isn't that a despicable act, to cheat the government? Well, Your Honor, Mr. Thoreau did not think it was a despicable act. Who was that? He was a poet. Thoreau? Henry Thoreau. That was a protest. It was a protest, Your Honor. I mean, somebody does it slyly, apparently, hoping to get it through. It's a very different kettle of fish. Well, Your Honor, in the alternative, I guess we would ask that this matter be remanded to the Board of Immigration Appeals and further to the Immigration Court for further factual finding on the record. Well, if we take the categorical approach and say Part 1 makes it a crime to make a false report, the effect of which is to deprive the government of revenue, I'm inclined to say that's morally despicable. And then what about the second part? Well, Your Honor, I think that the second part would be willful and intentional. Is it better or worse? I think it would be worse, because it would be willful and intentional, and the petitioner would submit that his acts before the Customs Department were not willful and intentional. Well, but the second part, the willful, is any willful act, it's not willfully making a false statement, so somebody else could make a false statement and you could willfully take advantage of it and still be convicted of this statute, couldn't you, without making a false statement? In other words, it says whoever is guilty of any willful act whereby the U.S. is deprived of any lawful duty. I suppose. So I suppose that's correct. Then there would not be, I guess I gave too early of a concession that there would not be a crime involving moral turpitude if it were willful, because perhaps the individual was not aware of the or needed assistance in completing the Customs form. Well, that part involves omission, too, doesn't it? Yes, it does involve omission. Well, what would the willfulness go to? What would he be doing willfully? I guess he would be willfully failing to complete the Customs form. Well, he could submit a form that somebody else filled out that was false. He didn't even know it was false, because he submits it willfully, on purpose. That's correct, Your Honor. There's no requirement that in doing that willful act, you have to know that the declaration that somebody else filled out is false. Is there? Well, I guess that would be correct, Your Honor, that if, for example, had he not spoken the English language and he had submitted a form completed by someone else, then it would have been willful, even though it was under his own name, and not knowing what was in the submission. And perhaps we would argue that in this matter, although we are tied to the record, that the mere fact of his omission does not rise to the level of moral turpitudinous as defined by the courts. All right. Unless there are further questions, you'll probably be relieved to know you can sit down. Yes. Thank you, Your Honor. Okay. Good morning. May it please the Court. My name is Regina Burr, counsel for the Respondent, John Ashcroft, Attorney General. This Court reviews the agency's determination based on the records before the Court. This Court, consequently, should look at the reasons that the immigration judge gave, and those are... But I guess what I have the most problems with, and if you can spend some time with me on that, would be the second part, the willful omission part of it, whether, and what exactly is in the record. Because from what I can tell, you have his plea of conviction, and that's it. So we can't go to the modified categorical approach, right? Because we have nothing other than that. So it really comes down to, is there any place in the statute that a person could be convicted and it wouldn't be moral turpitude? When the Court looks at whether or not a crime is moral turpitude, it looks at one of two things. It looks at the statutory definition and the inherent nature of the crime. So consequently, when we look at 542, of which Mr. Noltesh acknowledged that he was found guilty of, the first part of the statute, which says specifically that the individual must have either committed fraudulent or false, either mid-committed, submitted a fraudulent or false... I have a problem with that, but it's in the conjunctive on the last part. Is there any conduct there that might not be moral turpitude? Under the last part, the immigration judge found specifically that this language, it has inherited inside of it the evil intent, and that consequently an individual who has been convicted of committing this offense in and of itself had to have an evil intent in order for this crime to have been charged and to have been found guilty of this particular offense. But isn't it on this record, since all we have is the plea of conviction and we have the statute, isn't it a de novo review for us of the statute? It is a de novo review, but the government is asking the Court to do the de novo review based on the issues that were before the immigration judge. Here, Mr. Noltesh did not at all argue that this is a divisible statute. In fact, the first time it came up was before this court. Consequently, when the immigration judge looked at this case, it is no evidence in this record that the immigration judge found this to be a divisible statute. It doesn't matter whether he found it to be or not. It's up to us to decide whether it's divisible, isn't it? It is up to the Court to determine that, but we are arguing that the Court should accept the immigration judge's view of this statute in light of the fact that this issue was not raised before the immigration judge, nor has it been raised before the immigration judge. Well, even if it wasn't raised, you see, I'm bothered by this provision of the first paragraph, which makes it a crime to make a false statement without reasonable cause to believe the truth of the statement. That appears to permit conviction without fraudulent intent, but just with someone who acts out of reckless disregard. Do you agree with that? I know that someone makes a statement without cause to believe that the statement is true. That's the usual definition of reckless disregard, isn't it? I wouldn't be able to agree with that, Your Honor. The government's position is that because the very first paragraph is What does that clause mean then, that or clause? Does it add anything to the statute? Before that, it says whoever by means of false or fraudulent statement, and then it I don't see the language reckless disregard, Your Honor. Well, it says without reasonable cause to believe the truth of the statement. That's the definition. Isn't that the definition of reckless disregard? The government would necessarily say that that would be the definition. Well, then what does that phrase add to make a statement without reasonable cause to believe that this statement is true? It appears to the government that this language is that the very act and nature of an individual submitting a claim to the government and not stating all the information there, whether or not he knew the information was going to lead to fraud or was going to defraud the government is not a material aspect of this particular case. No, no, it's not whether or not it's going to lead to fraud, but the statement is whether or not it's true. In other words, if you submit a statement without knowing whether or not it's true, is that fraud? Is that intentional? It wouldn't be intentional if you did not know that it's not true, exactly. Well, okay, but can you say that is synonymous with intent to defraud? Obviously, if you've got intent to defraud, you've got moral turpitude and you're home free. You don't have that here. And so I think what Judge Chasim is saying is if since all we have is the plea of conviction and we don't have the record is not further developed in terms of what the basis of that plea was, we can't tell from that whether there was an intent to defraud or what the... No, we cannot tell from that, but the government's argument is that even before this court, Mr. Notash is not at all challenging this first provision. He's challenging only the second provision. He's saying that there was an error made. The second provision clearly provides that, and in fact, he's admitted that I committed the second offense. And this provision clearly provides that the act, any act willful or mission whereby the United States shall be deprived. That in and of itself is evil intent and it has an element of defraud in that particular provision. Consequently, it's the government's position that in light of the record that was before this court and the claims and the arguments that Mr. Notash has raised, that this court should find, first of all, that Mr. Notash was properly found to have committed a crime involving moral turpitude based on that second provision. As to the first provision of 542, because Mr. Notash did not argue that before the immigration judge and has not argued it in his brief to this court, then government's position is that he's barred from this court to find that it doesn't have jurisdiction over that particular matter and that it should implode. But we have to go on the documents before the immigration judge. And what is it that makes us know that he was convicted under the second paragraph? Mr. Notash's own words before this court in his opening brief, that he says specifically that there's one issue before this court and he says whether or not the government erred and focusing only on the first part. Because he says, I didn't commit the first part. He says, I committed the second. So if the court wants to accept what Mr. Notash is saying, he's admitting to the court it's only the second provision of 542 that I pled guilty of having committed. And the court is right. We do not know exactly what the particular portion of 542 is that Mr. Notash was found guilty of, because we don't have any records. But we do have Mr. Notash's own words. And Mr. Notash has told this court he did not argue otherwise either before the immigration judge or on appeal to the board that it is the second provision. The government would ask the court to uphold the finding that Mr. Notash is, in fact, guilty of committing a crime involving moral turpitude and that he is removable for that offense. Are there any questions from the court? There don't appear to be further questions. Thank you, counsel. All right. This matter will stand submitted. The next matter on calendar is Tahani v. Wayne Kaye, Interim Director, Case No. 04,
judges: Noonan, Tashima, Callahan